UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| DEBBIE DANCER,<br><br>        Plaintiff,<br><br>vs.<br><br>SEATTLE HEMPFEST, a.k.a. SEATTLE EVENTS<br><br>        Defendant. | No. 3:20-cv-00288-SLG-DMS<br><br>**REPORT AND RECOMMENDATION[1] TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT AND GRANT SUMMARY JUDGEMENT FOR THE DEFENDANT** |

## I. INTRODUCTION

Plaintiff Debbie Dancer, appearing *pro se*, asks the Court to award her a judgement of $500,000 from defendant Seattle Hempfest for harm caused by alleged defamatory statements made on the personal Facebook pages of two Alaska Hempfest employees (Dkt. 13). The defendant responded in opposition to the plaintiff's motion for judgement and filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Seattle Hempfest is not liable for the alleged actions of the employees of Alaska Hempfest. The plaintiff filed a reply to the defendant's motion to dismiss, including exhibits A-Y (Dkt. 15).

---

[1] This report and recommendation is being issued as a final report and recommendation. Pursuant to 28 U.S.C. § 636 (b)(1)(C), any objections will be considered by the District Court Judge who will accept, reject, or modify the recommendation, or resubmit the matter to the Magistrate Judge for additional consideration and recommendations.

The motions are now ripe for consideration. For the following reasons, the Court recommends that the District Court **DENY** the plaintiff's motion for summary judgement and **GRANT** summary judgement in favor of the defendant.

## II.  STATEMENT OF FACTS

The plaintiff alleges that the defendant provided an "affiliated license" to Alaska Hempfest (Dkt. 1 at 7). The defendant states that "[s]everal groups have entered into agreements with [the defendant] to license the use of the word 'HEMPFEST' and hold numerous gatherings advocating for hemp and legal reform," further asserting that the defendant "has no relationship with Alaska Hempfest other than that of licensee licensor" for use of the trademarked name HEMPFEST (Dkt. 14 at 2).

This suit involves alleged defamatory statements made by Nordica Friedrich and Niki Raapana, neither of whom were named as defendants by the plaintiff. The plaintiff alleges that at the time of the events in the complaint, Friedrich held the title of Director/Music Director at Alaska Hempfest and Raapana held the title of Director at Alaska Hempfest (Dkt. 1 at 7). At the time of the alleged conduct, Friedrich and Raapana each had a personal Facebook page (Dkts. 15-3, 15-5). Under employment information on their Facebook pages, Friedrich and Raapana stated their respective titles at Alaska Hempfest (Dkts. 15-4; 15-6). While their profile pictures during the time of the alleged conduct displayed images of themselves, their banner photo at the top of the page displayed an advertisement for an Alaska Hempfest event (Dkts. 15-3; 15-5). Included in that advertisement, in small lettering, are the words: "LICENSED AFFILIATE OF SEATTLE HEMPFEST® SINCE 2015" among other text and images (Dkt. 15-3; 15-5). The plaintiff also asserts that "Vivian McPeak, President, Seattle Events, Producer of Seattle

Hempfest and Cyril Bouanna, Board of Directors of Seattle Hempfest are active on [Friedrich and Raapana's] Facebook pages making comments on their posts" (Dkt. 15 at 4). The plaintiff does not allege that the defendant or any of its directors or employees commented on the alleged defamatory posts.

The plaintiff alleges that Friedrich and Raapana made defamatory statements about the plaintiff on their personal Facebook pages (Dkt. 1 at 7). Two of those alleged posts were: "Um also friendly reminder that in 2014 Debbie Dancer sexually abused my kids & tried to kill me – for anyone stoked on Honey Jam" and "Unfriended like 30 ppl promoting Honey Jam/Debbie Dancer. Fuck off with your 'wellness' if you support a THIEF & a CHILD ABUSER" (Dkt. 1 at 7-8). The plaintiff alleges that the Facebook posts "led to a loss in current and future income, current and future customers/clients, all future business for [plaintiff's company] Honey Bill Hill, and any future business/businesses the Plaintiff would have the opportunity to establish" (Dkt. 1 at 7).

The plaintiff alleges that she suffered $500,000 in damages due to the defamatory statements; $250,00 of that due to "the ruined life reputation," "fear for plaintiff's life," and "shame, mortification" and $250,000 due to "loss of current and future business opportunities" (Dkt. 1 at 10).

### III. APPLICABLE LAW

**A. Dismissal Pursuant to Rule 12(b)(6) and Summary Judgement Pursuant to Rule 56**

A defendant may seek dismissal by motion on the basis of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12. "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "In all cases, evaluating a complaint's plausibility is a 'context-specific' endeavor that requires courts to 'draw on ... judicial experience and common sense.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *Eclectic Props. E., LLC v. Marcus Millichap co.*, 751 F.3d 990, 996 (9th Cir. 2014).

"If the court considers the additional materials" beyond the allegations in the complaint, "it must convert the motion to dismiss to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, providing the parties a reasonable opportunity to be heard. . . . 'A Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating, preferably by an explicit ruling, that it will not exclude those materials from its consideration.'" *Snead v. Wright*, No. 3:19-CV-00209 JWS, 2020 WL 7234158, at *2 (D. Alaska Oct. 6, 2020) (quoting *Swedberg v. Marotzke*, 339 F.3d 1139, 1146 (9th Cir. 2003).

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**B. Agency Liability for Tortious Acts**

"The Alaska Supreme Court has adopted the Restatement (Second) of Agency rule to determine vicarious liability for negligent and intentional torts." *Williams v. Alyeska Pipeline Serv. Co.*, 650 P.2d 343, 349 (Alaska 1982). "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency §

1(1) (1958). "[T]he scope of an agency relationship must have boundaries as a principal cannot be held liable for all actions an agent takes while going about his daily life. To this point, agency law conditions the scope of the agency relationship to transactions where the agent is acting on the principal's behalf." *Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 100–01 (Iowa 2011) (citing Restatement (Third) of Agency § 1.01).

"[I]n order for an agency relationship to exist, an agent must have a power to alter the legal relations between the principal and third parties. The principal, in turn, must have the right to control the conduct of the agent with respect to matters entrusted to him." *U.S. ex rel. N. Star Terminal & Stevedore Co. v. Nugget Const., Inc.*, 445 F. Supp. 2d 1063, 1070–71 (D. Alaska 2006).

Even if actual agency does not exist, a principal may still be liable for the conduct performed by parties with apparent authority to act on the principal's behalf; "apparent authority to do an act is created as to third persons by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Sprague v. Tesoro Alaska Petroleum Co. Petro Prod.*, No. 3AN-87-1988 CIVIL, 1994 WL 792539, at *5 (Alaska Super. Ct. June 30, 1994).

> [I]t is the *principal's* conduct that gives rise to his liability and not the conduct of the alleged agent; "one dealing with an alleged agent must prove that the principal was responsible for the appearance of authority, by doing something or permitting the alleged agent to do something that led others, including the plaintiff, to believe that the agent had the authority he purported to have."

*Id.* (emphasis in original).

"[A] finding of apparent agency requires proof of *actual reliance* on the principal conduct" that "led others, including the plaintiff, to believe that the agent had the authority he purported to have." *Id*. at *6 (citing *Jackson v. Power*, 734 P.2d 1376, 1381 (Alaska 1987)).

## IV. DISCUSSION

In their briefings to the Court, the parties have demonstrated that there are no genuine disputes as to any material facts and that judgment can be issued as a matter of law. *See* Fed. R. Civ. P. 56. The plaintiff fails to allege facts sufficient to establish actual or apparent agency between the defendant and Friedrich and Raapana regarding the posts on their respective personal Facebook pages. Because the Court looks beyond the complaint to consider the arguments, allegations, and exhibits included in the plaintiff's motion for judgement (Dkt. 13), the defendant's response and motion to dismiss (Dkt. 14), and plaintiff's reply to that response (Dkt. 15), the Court's report and recommendation is properly considered a recommendation on a summary judgement ruling, rather than dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

**A. The Plaintiff Does Not Allege Facts Sufficient to Establish Actual Agency Regarding Friedrich and Raapana's Personal Facebook Pages as a Result of the Licensing Agreement.**

The plaintiff does not allege that the terms of the licensing agreement between Seattle Hempfest and Alaska Hempfest conferred to Alaska Hempfest's directors or employees the power to make social media posts on its behalf. Friedrich and Raapana, who are not parties in this case, lacked the "power to alter the legal relations between [Seattle Hempfest] and third parties" when publishing posts to their personal Facebook pages and the defendant was not conferred "the right to control the conduct" of Friedrich and Raapana with respect to their Facebook pages; therefore, no actual agency existed sufficient to attach vicarious liability on the

defendant. *See U.S. ex rel. N. Star Terminal*, 445 F.Supp. 2d at 1070-71. In *Emeson v. Dep't of Corr.*, an appellate court upheld the lower court's grant of summary judgement in an employee-employer agency context where

> [the plaintiff] d[id] not allege that [an employee of the defendant] was fulfilling any job functions in posting the comment on Facebook, and the record d[id] not support any such inference, [instead] the record shows [the employee] posted the comment from her personal account at 8:04 pm on May 13 on her personal Facebook page. Therefore, we hold that the trial court properly granted summary judgment dismissal of [the plaintiff's] invasion of privacy claim because [the employee's] Facebook post was made outside the scope of her employment with DOC.

194 Wash. App. 617, 641, 376 P.3d 430, 443 (2016). Similarly, here the plaintiff does not allege that Friedrich nor Raapana's personal posts to their Facebook pages were connected to any authority conferred from the defendant to Alaska Hempfest as a result of their licensing agreement.

Even if the licensing agreement includes some manifestation that Alaska Hempfest act on the defendant's behalf in promoting and protecting the value of the trademarked name "HEMPFEST," no facts alleged by the plaintiff establish that the conduct of Alaska Hempfest employees or directors on their personal Facebook pages is within the scope of that agency. As mentioned *supra*, "the scope of an agency relationship must have boundaries as a principal cannot be held liable for all actions an agent takes while going about his daily life." *Soults Farms, In.*, 797 N.W.2d at 100-01. The plaintiff therefore has failed to allege facts sufficient to establish actual agency so as to hold the defendant vicariously liable for the alleged defamatory posts.

### B. Any Apparent Agency Between the Defendant and Alaska Hempfest Did Not Extend to Statements Posted on Raapana and Friedrich's Personal Facebook Pages.

The plaintiff next relies on a theory of apparent agency to impose vicarious liability on the defendant for the actions of Friedrich and Raapana, asserting that the defendant's conduct contributed to the impression that Friedrich and Raapana, who are not parties to this case, were speaking on behalf of the defendant when they posted on their personal Facebook pages, even if they did not actually have the authority to do so.

With apparent agency, the relevant inquiry is whether the defendant's conduct, "reasonably interpreted," could cause a "third person to believe that [the defendant] consents to have the act done on his behalf." *Sprague*, 1994 WL at *5. The plaintiff alleges that the following conduct created such belief: (1) that the defendant did not object to Friedrich and Raapana's use of an Advertisement for Alaska Hempfest as a banner photo on their personal Facebook pages which includes the text: "LICENSED AFFILIATE OF SEATTLE HEMPFEST® SINCE 2015" (Dkts. 15-3; 15-6); (2) that McPeak, president of Seattle Hempfest, and Bouanna, a member of the board of directors at Seattle Hempfest, corresponded with Friedrich and Raapana on Facebook; and (3) that the defendant was "actively involved with Alaska Hempfest," stating that Bouanna "came to Alaska to assist Alaska Hempfest during the 2016, 2017, and 2018 Alaska Hempfest events" and the defendant "also advertised Alaska Hempfest on Seattle Hempfest['s] webpage" (Dkt. 15 at 3).

First, the Court is not persuaded that the defendant's lack of objection to a person displaying an advertisement for another Hempfest event on their personal Facebook page could be reasonably interpreted as conferring to that person the power to speak on behalf of Seattle

Hempfest. The mere presence of the words "LICENSED AFFILIATE OF SEATTLE HEMPFEST" on the advertisement does not bolster such claim. The Facebook pages displayed the individuals' names and the profile pictures on the pages were of those individuals; it was not a Facebook page for Alaska Hempfest or Seattle Hempfest. Next, the plaintiff does not allege that McPeak nor Bouanna posted any comments on the alleged defamatory statements or in any way endorsed them as to justify a third party's belief that they were made on behalf of the defendant; instead the correspondence between Bouanna, Friedrich, and Raapana was related to the promotion of Alaska Hempfest events (Dkts. 15-12; 15-13; 15-14). Any actions by the defendant and its employees to promote Alaska Hempfest events is not conduct sufficient to confer authority to two Alaska Hempfest directors to speak on behalf of the defendant on unrelated matters on their personal Facebook pages.

Equally fatal to the plaintiff's complaint is the lack of factual allegations establishing that the plaintiff and any third parties *actually believed* that Friedrich and Raapana were speaking on behalf of the defendant when they made the alleged defamatory posts about their personal clashes with the plaintiff. *See Sprague*, 1994 WL 792539 at *6.

The plaintiff does not allege facts sufficient to demonstrate that Friedrich or Raapana were acting in the scope of any actual or apparent authority as agents for the defendant when they made the alleged defamatory posts. Therefore, the defendant cannot be held vicariously liable for those statements.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that the District Court **DENY** the plaintiff's motion for summary judgement and **GRANT** summary judgement for the defendant.

In granting summary judgement for the defendant, the Court recommends that the District Court convert the defendant's motion to dismiss into a motion for summary judgement, as this Court's report and recommendation considers briefings and exhibits beyond those included in the complaint.

The parties have until **August 9, 2021** to file any objections to this report and recommendation, and until **August 16, 2021** to file any reply to those objections.

DATED this 26th day of July, 2021 at Anchorage, Alaska.

/s/Deborah M. Smith<br>CHIEF U.S. MAGISTRATE JUDGE